UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __PO Box 56091, Philadelphia, PA 19130__

Address of Defendant: __75o Race Street, Philadelphia, PA 19107__

Place of Accident, Incident or Transaction: __2300 S. 24th Street, Philadelphia, PA 19145__

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __07/30/2021__   *(signature)*   Pro Se
             Attorney-at-Law / Pro Se Plaintiff                Attorney I.D. # (if applicable)

---

**CIVIL:** (Place a √ in one category only)

A. **Federal Question Cases:**
☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
       *(Please specify):* _____

B. **Diversity Jurisdiction Cases:**
☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Derrick Jacobs (pro se)__, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __07/30/2021__   *(signature)*   Pro Se
             Attorney-at-Law / Pro Se Plaintiff                Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

Civil Action File Number:

# UNITED STATES DISTRICT COURT OF THE EASTERN DISTRICT OF PENNSYLVANIA

Derrick Jacobs

**Plaintiff**

v.

City of Philadelphia, et al.
Philadelphia Police Department, Philadelphia District Attorney's Office, Philadelphia Police Commissioner Danielle Outlaw in her official and individual capacity, Philadelphia District Attorney Lawrence Krasner in his official and individual capacity, Assistant District Attorney Tracy Tripp in her official and individual capacity, Deputy Police Commissioner Christine Coulter in her official and individual capacity, Chief Inspector Dennis Wilson (former Deputy Police Commissioner) in his official and individual capacity, Deputy Police Commissioner Benjamin Naish in his official and individual capacity, Lieutenant Jason Hendershot in his official and individual capacity, Inspector DF Pace in his official and individual capacity, Lieutenant Patrick Quinn in his official and individual capacity.

**Defendants**

1

## Introduction

Derrick Jacobs ("Jacobs") was employed as a Philadelphia Police Detective. He began his career as a Philadelphia Police Officer in January 1996 and was promoted to Police Detective in December 1998. During his career as Police Detective, Jacobs received many honors, certifications and assignments. Jacobs was vetted and received the highest security clearances for the Papal visit and Democratic National Convention. Jacobs also received certification and performed duties as a hostage negotiator. Over the years Jacobs assignments included Divisional Detective, Homicide Detective, and original member of the Officer Involved Shooting Investigation ("OISI") Unit, where Jacobs was the only African American Detective. While Jacobs is not a trained attorney, he clearly knows right from wrong. What the City of Philadelphia, Philadelphia District Attorney's Office and Philadelphia Police Department did to him was not only wrong but downright criminal.

## CONCISE STATEMENT OF FACTS

1. On or about September 27, 2018 Assistant District Attorney Tracy Tripp ("Tripp") learned that Detective Derrick Jacobs ("Jacobs") was attempting to expose corruption and criminality at the Philadelphia District Attorney's Office. On September 27, 2018 Jacobs supervisor, Lieutenant Jason Hendershot ("Hendershot") contacted Jacobs. Hendershot informed Jacobs that Tripp had contacted him in reference to a Detective speaking with an attorney in Court regarding the Pownall grand jury. Jacobs informed

2

Hendershot he did not participate in the Pownall grand jury and was speaking to an attorney about how to expose corruption and criminality at the District Attorney's Office and Tripp.

2. Hendershot relayed this information back to Tripp.

3. On October 16, 2018 Tripp sent Jacobs a "court notice" with the Pownall case number on it.

4. Jacobs emailed Tripp and asked if the court notice was sent in error because the Pownall grand jury had concluded with a Presentment.

5. Tripp responded the notice was not sent in error and there was still more "investigation" to do and Jacobs should seek counsel.

6. Jacobs later learned that Tripp was initiating a criminal proceeding against Jacobs for attempting to expose the corruption and criminality that existed at the Philadelphia District Attorney's Office.

7. Jacobs learned the criminal proceeding was initiated against him to ensure his silence regarding the corruption and criminality at the Philadelphia District Attorney's Office ("DAO").

8. Once Tripp believed Jacobs silence was guaranteed she informed Jacobs on August 1, 2019 that she had withdrawn prosecution against him.

9. Jacobs repeatedly asked the Philadelphia Police Department ("PPD") to initiate a criminal investigation against Tripp and refer the matter to the United States Attorney.

3

10. On October 4, 2019 Jacobs filed a civil complaint against District Attorney Lawrence Krasner ("Krasner"), Tripp and the Philadelphia District Attorney's Office.

11. Jacobs also emailed then Philadelphia Police Commissioner Christine Coulter ("Coulter") about the Retaliation against him by the Philadelphia District Attorney's Office for being a Whistleblower.

12. Commissioner Coulter refused to respond to Jacobs request for protection and initiation of a criminal investigation.

13. On November 26, 2019 Deputy Police Commissioner Dennis Wilson ("Wilson") summoned Jacobs to his office via Hendershot.

14. Wilson acknowledged the victimization of Jacobs by the Philadelphia District Attorney's Office. Wilson wanted Jacobs to contact the Pennsylvania Attorney General's Office for the criminal investigation. Wilson informed Jacobs, Coulter would not meet with Jacobs because she did not want to be a witness in his litigation.

15. Jacobs contacted the Attorney General's Office and attempted to report back to Wilson repeatedly via Hendershot.

16. Hendershot kept informing Jacobs Wilson did not respond back to him.

17. On January 18, 2020 Jacobs participated in a Law Enforcement Podcast.

4

18. During the podcast Jacobs discussed the retaliation against him for being a Whistleblower and his civil litigation.

19. On January 22, 2020 Hendershot informed Jacobs Wilson wants departmental charges brought against Jacobs for his participation in the podcast even though Jacobs did not violate any departmental policy.

20. Hendershot informed Jacobs that multiple members of the PPD Command Staff requested that Wilson not retaliate against Jacobs. The Command Staff personnel wanted Wilson to rescind the retaliatory act.

21. Jacobs learned that Wilson, Hendershot, Pace, the PPD and DAO, as well as Krasner and Tripp's attorney(s) all conferred and conspired to remove Jacobs from the PPD for exposing corruption.

22. On February 10, 2020 Jacobs informed new Philadelphia Police Commissioner Danielle Outlaw ("Outlaw") of the criminal activity by her Command Staff against Jacobs.

23. Outlaw like her predecessor Coulter did not respond to Jacobs request for protections even though **DEPARTMENTAL POLICY** state Jacobs is afforded these protections.

24. On February 11, 2020 Jacobs was charged with Conduct Unbecoming, Unspecified.

25. Jacobs did not commit a departmental violation or break any law.

26. Jacobs was not afforded an investigation or departmental due process. The parties had already determined Jacobs' fate.

27. The penalty for the fabricated infraction is 30 days suspension or termination.

28. Jacobs learned that Outlaw was going to discipline Jacobs through Commissioner's Direct Action (CDA) and terminate Jacobs when he returned to work.

29. Jacobs had to begin to exhaust his sick and vacation time to avoid termination and seek professional help, while waiting on a response and Whistleblower protection from Outlaw.

30. Jacobs repeatedly asked Outlaw if this was true and never received a response.

31. On August 26, 2020 Outlaw informed Jacobs she never received his correspondences. This was either a lie or violation of **DEPARTMENTAL POLICY**, possibly both.

32. Outlaw informed Jacobs she could not address his concerns and instructed Jacobs to communicate with the defendants' attorney. This was also a violation of **DEPARTMENTAL POLICY**.

33. After corresponding with the defendants' attorney (who acknowledged Jacobs' view), Jacobs reached back out to Outlaw to discuss the corruption at the DAO and PPD.

34. On October 9, 2020 Lieutenant Patrick Quinn (Outlaw's administrative secretary) informed Jacobs that it was inappropriate and disruptive

6

for Jacobs to continue to report corruption to Outlaw.

35. On November 12, 2020 Hendershot informed Jacobs his sick time will run out on December 11, 2020 and Jacobs would be carried "T" time for fifteen days before being terminated from the PPD.

36. Jacobs begins FMLA after sick time runs out and begins to exhaust his vacation time.

37. On March 12, 2021 Jacobs is constructively discharged from the PPD by the defendants and forced into retirement.

38. Jacobs clearly, without any ambiguity, was retaliated against for exposing corruption and criminality at the DAO and PPD.

39. On or about September 27, 2018 Jacobs attempted to expose the corruption and sought the advice of counsel. Thereafter, ADA Tripp learned that Jacobs was attempting to expose her illicit actions and she responded by initiating a fabricated criminal investigation against Jacobs in an effort to silence him from exposing the corruption.

### CORRUPTION EXAMPLES AT THE PHILADELPHIA DISTRICT ATTORNEY'S OFFICE

40. After the election and inauguration of Krasner as the new Philadelphia District Attorney, Krasner immediately attempted to remove Jacobs' (the only African-American) and his partner Detective William Sierra ("Sierra"), who

7

was the only Hispanic American from the Officer Involved Shooting Investigation ("OISI") Unit.

41. There were several meetings at the DAO about how to accomplish this feat. Krasner contacted the PPD advocating their removal.

42. When the Command Staff who handpicked Jacobs and Sierra refused to honor Krasner's wishes; the PPD transferred the entire Command Staff (Krasner's DAO later arrested one of them).

43. Krasner's first Officer Involved Shooting ("OIS") occurred on January 13, 2018.

44. The OIS occurred on the 2800 block of Kensington Avenue and Jacobs was the assigned investigator within the OISI unit.

45. The incident originated with a vehicle investigation.

46. During the investigation Police Officer Timothy Stephan observed the passenger of the vehicle, defendant, Stefon Crawley with a handgun in his waistband loaded with an extended magazine.

47. Officer Stephan attempted to retrieve the firearm and a struggle began with defendant Crawley.

48. Witness accounts stated during the struggle, Crawley was yelling the police will have to kill him.

49. Crawley also attempted to disarm Officer Stephan during the struggle (Crawley's DNA was found on Officer Stephan's firearm.

8

50. Arriving Officers observed the struggle and heard a single gunshot. Subsequently the arriving Officer observed Crawley fleeing the vehicle on foot after gunshot and fired in the direction of Crawley, striking him.

51. Crawley was arrested on location and transported to an area hospital for treatment of his injuries.

52. Krasner's DAO intentionally did not clear the Officers involved in this OIS to testify against Crawley because Krasner's former law firm was representing Crawley.

53. Tripp and Assistant District Attorney Brian Collins ("Collins") had a meeting with the judge and withdrew the charges against Crawley so he could seek damages against Officer Stephan in a civil suit represented by Krasner's former law firm.

54. In 2021 Crawley's lawyers wanted a deposition from Officer Stephan. Stephan could not provide a deposition because 3-1/2 years after the incident Officer Stephan still was not cleared to testify regarding the incident from the DAO.

55. This was a problem for Krasner's former law firm.

56. Krasner's DAO (Tripp and Collins) finally cleared Officer Stephan on May 28, 2021 only so Officer Stephan could provide the civil deposition. Problem solved.

9

57. Nothing in the investigation changed in those years other than financial compensation for defendant Crawley, who attempted to kill multiple Police Officers. The one thing that stopped him was the heroic actions of Officer Stephan.

58. Now Krasner and his corrupt organization want to punish that heroism by assisting in financially compensating an attempted murderer and his former law firm.

59. Can someone say CORRUPTION?

60. There is one little problem in their plan. The statute of limitations on attempted murder and aggravated assault in Pennsylvania is five years.

61. Now that Officer Stephan is cleared to testify there is no reason not to prosecute Crawley at this point.

62. When Officer Stephan inquired about prosecuting the person who tried to kill him. The corrupt DAO is not responding.

63. On December 11, 2019 Collins sent an email to OISI unit requesting information on the Crawley investigation.

64. In the email Collins stated he knew it was Jacobs' investigation but he wanted the information provided from a different investigator.

65. That same day, December 11, 2019, one of Krasner's publicist at the Philadelphia Inquirer, Samatha Melamed, published an article

10

in the paper slanting the facts in defendant Crawley's direction.

66. When Jacobs asked Ms. Melamed how she obtained leaked information and evidence in his investigation that he did not provide. Ms. Melamed responded she does not recall who provided the information from three years ago.

67. Maybe a subpoena would jog her memory.

68. The DAO initiated a criminal proceeding against Derrick Jacobs for attempting to expose corruption.

69. Tripp stated the proceedings were initiated because Jacobs leaked grand jury information that he did not have. A grand jury that Jacobs did not participate in.

70. These corrupt officials did not want their "operation" exposed and threatened Jacobs to keep him silent.

71. Produce the probable cause that does not exist.

72. Krasner DAO and the Internal Affairs Division (IAD) of the PPD are using complaint files to discredit Officers to have cases dismissed in court.

73. In one case an Officer's daughter was raped by a family member from age 6 to 14 (when the Officer found out and filed charges).

74. The defendant, who was convicted, filed a frivolous abuse of power IAD complaint against the Officer (which was dismissed).

11

75. IAD and the DAO (neither wants to claim responsibility) provided the sordid details to the defense attorney in an effort to indicate this Officer abuses their authority.

76. When the Officer, who along with their daughter, are now traumatized, complained; the DAO retaliated against the Officer and placed the Officer on the Do Not Testify list to punish them for complaining.

77. One thing I have learned during this journey. There are a multitude of incidents that have come to light. Most Officers are scared to come forward and jeopardize their career (most stating, look what they did to you, meaning Jacobs).

78. Defendants Wilson and Coulter were provided numerous items outlining the corruption at the DAO to forward to the US Attorney by other parties not named Jacobs.

79. Assistant District Attorney Vincent Corrigan ("Corrigan") had defendant Hendershot falsify a legal document (affidavit) so they could make a justified OIS unjustified and charge the Officers after a corrupt investigation.

80. Question: How is it that a person who falsified an affidavit (legal court document) and swore it out in front of a magistrate in an effort to have Officers arrested, still the Commanding Officer of a unit that demands integrity, honesty and transparency?

81. Easy. This is a corrupt organization and Jacobs has learned Hendershot is part of the cabal.

82. For the record, this is the same Hendershot that swore out the arrest warrant against Pownall. The facts in that affidavit were also false.

83. Krasner's DAO is arresting any Officer he can, for any reason.

84. I thought falsifying affidavits was a crime.

### PHILADELPHIA POLICE DEPARTMENT CORRUPTION

85. Simple. Jacobs exposing corruption at the DAO was grounds for retaliation.

86. The disciplinary documents against Jacobs actually state the reason is because I spoke out against Krasner.

87. The defendants violated Philadelphia Police Department Policy.

88. The defendants violated the law.

89. The defendants are so blatant with their corruption.

90. They could not find a departmental violation for Jacobs so they made the violation Unspecified.

91. Jacobs did not violate any Philadelphia Police Department Policy.

13

92. Jacobs did not violate any law.

93. Here is an example of corruption, collusion, criminality and conspiracy in one incident by officials at the PPD, DAO, IAD and City Solicitor.

94. This incident shows the level of disdain to the citizens of Philadelphia, in particular the African American community.

95. Anthony Voci ("Voci"), former chief of the DAO homicide division was involved in a road rage incident with a black female on Lincoln Drive.

96. Voci, who is not sworn Law Enforcement, illegally detained the female after admittedly speeding and cutting her off with his motorcycle (unlawful restraint), while flashing a meaningless badge as it relates to the incident only Voci's ego.

97. When the female did the adult thing and went around Voci and went home, Voci took down her license plate number and called his corrupt friend at the PPD, Deputy Police Commissioner, Benjamin Naish ("Naish").

98. Voci (white male) and Naish (white male) then concoct a scheme to arrest the female and take (steal) her vehicle.

99. This was done to apply salve to Voci's bruised ego (common in Krasner's DAO).

100. So after the female is arrested and her vehicle stolen. The VICTIM files a complaint with IAD.

101. Now that their criminal actions has possible consequences. Naish attempts to blame a African American Police Commander for their (Voci and Naish) criminal activity by lying to IAD (punishable by termination).

102. When the Commander complained, retaliation came their way.

103. The false arrest of the female is criminal.

104. So the corrupt criminals get together to make this go away fast.

105. The DAO, PPD, IAD and City Solicitor made a quick settlement with the victim to hide corruption.

106. Here are a few questions: Why hasn't Voci and Naish been arrested? Why hasn't Voci and Naish been fired? Why hasn't there been any mention of this incident in the news media? Did the settlement include a Non Disclosure Agreement ("NDA")?

107. I will answer the first two. Voci and Naish are part of the corrupt cabal that exists at the PPD and DAO.

108. The cabal has falsified affidavits, had innocent citizens arrested and fired and caused the deaths of a multitude of African Americans.

109. All without any accountability or publicity.

110. This was just one incident that encompasses the criminal and corrupt cabal at the PPD and DAO.

111. There are many more. I have personally spoke with individuals who are afraid of the consequences of coming forward with their stories.

112. The defendants' corrupt organization have arrested and terminated the careers of heroic Law Enforcement professionals that put their lives on the line for the citizens of Philadelphia.

113. Their stories will be told in front of the jury.

114. Here you have DOCUMENTED facts of criminality and corruption without consequences.

115. Why was a criminal proceeding initiated against Jacobs?

116. Why was Jacobs charged with Conduct Unbecoming an Officer, UNSPECIFIED?

117. The defendants MUST answer these questions in front of a jury after witness testimony.

## COUNT ONE: 1983 FIRST AMENDMENT MALICIOUS PROSECUTION

118. The defendants initiated a criminal proceeding against Jacobs.

119. The proceeding ended in Jacobs favor.

120. The proceeding was initiated without probable cause.

121. The defendants acted maliciously. Or for a purpose not to bring Jacobs to justice.

122. Here the defendants initiated a criminal proceeding against Jacobs without probable cause. The proceeding was retaliation and only initiated to ensure Jacobs silence from becoming a Whistleblower and exposing criminality and corruption at the DAO.

### COUNT TWO: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

123. The defendants' actions have caused untold amounts of emotional distress on Jacobs for which professional assistance was obtained.

124. The actions of the defendants were intentional and achieved their desired result or harming Jacobs.

### COUNT THREE: CONSPIRACY

125. The defendants conspired to violate Jacobs of his Rights protected by the United States Constitution.

126. The defendants retaliated against Jacobs for exposing criminality and corruption.

### COUNT FOUR: PA WHISTLEBLOWER LAW 1421/1423

127. The defendants violated the protections afforded Jacobs under Pennsylvania Whistleblower Law statute.

128. The defendants conspired and colluded to initiate criminal proceedings and PPD departmental discipline in retaliation for Jacobs exposing corruption and criminality at the DAO and PPD.

### COUNT FIVE: FOURTEENTH AMEMDMENT DUE PROCESS VIOLATION

129. The defendants violated Jacobs Due Process Rights by initiating a criminal proceeding without probable cause.

130. The defendants violated Jacobs Due Process Rights by initiating department discipline when Jacobs did not violate departmental policy or law.

## CERTIFICATE OF SERVICE

I, Derrick Jacobs, hereby certify that on August 3, 2021 a true and correct copy of the Pro Se Brief, was electronically served via ECF and/or email upon all parties of record listed below:

> Jennifer MacNaughton, Esquire
> Kelly S. Diffily, Esquire
> Kia Ghee, Esquire
> Nicole S. Morris, Esquire
> City of Philadelphia Law Department
> 1515 Arch Street, 16th Floor
> Philadelphia, PA 19102
> ***Attorneys for Defendant(s)***

Derrick Jacobs
P.O. Box 56091
Philadelphia, PA 19130
derrickjacobs9116@gmail.com
***Pro Se Plaintiff***

**Date: August 3, 2021**